IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GRADY KRZYWKOWSKI, | ) | CASE NO. 4:06 CV 1033 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| DAVID BOBBY, Warden, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

**Introduction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Facts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    **A.**     **The underlying offenses and trial** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    **B.**     **Direct appeal** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        *(1)*    *The Ohio court of appeals* . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        *(2)*    *The Supreme Court of Ohio* . . . . . . . . . . . . . . . . . . . . . . . 16
    **C.**     **Rule 26(B) proceedings** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    **D.**     **Post-conviction proceedings** . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    **E.**     **Federal habeas corpus** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
        *(1)*    *The petition*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
        *(2)*    *State's return of the writ* . . . . . . . . . . . . . . . . . . . . . . . . 26
        *(3)*    *Traverse* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    **A.**     **Standards of review** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
        *(1)*    *Unreasonable application of clearly established federal law* . . . . 28
        *(2)*    *Ineffective assistance of counsel* . . . . . . . . . . . . . . . . . . . . 29
        *(3)*    *Non-cognizable state evidentiary law claims* . . . . . . . . . . . . . 31
        *(4)*    *Procedural default* . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
        *(5)*    *Basis for an evidentiary hearing* . . . . . . . . . . . . . . . . . . . 33
    **B.**     **Application of standards to Krzywkowski** . . . . . . . . . . . . . . . . . 34
        *(1)*    *The state court's denial of ground one – purported ineffectiveness*
                *of trial counsel in not obtaining a defense expert – was not an*
                *unreasonable application of clearly established federal law and*
                *thus this claim should here be denied and no evidentiary hearing*
                *conducted.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*(2)*     *Grounds two and three – alleging error in the admission of and comment on "other acts" testimony – are state-law evidentiary claims and so should here be dismissed as non-cognizable.* . . . . 37

*(3)*     *Ground four – alleging constitutional error in permitting the testimony of 6-year old Kristen and 4-year old Aaron Krzywkowski – is procedurally defaulted, Krzywkowski has not excused the default for "cause"and thus this claim should be dismissed.* . . . 39

**Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

## Introduction

Before me by referral[1] is the petition of Grady Krzywkowski for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2]  Krzywkowski is currently incarcerated at the Trumbull Correctional Institution in Leavittsburg, Ohio, where he is serving a sentence of five years to life imposed after his 2001 conviction by a jury in the Cuyahoga County (Ohio) Court of Common Pleas on four counts of rape and two counts of gross sexual imposition involving three of his minor children.[3]

Krzywkowski here asserts four grounds for habeas relief:

(1)     that his trial counsel was ineffective in not seeking the testimony of an expert witness on the behavior of sexually abused children to rebut testimony of the state's expert on this subject;[4]

_____

[1] ECF # 5.

[2] ECF # 1.

[3] *Id.* at 1.

[4] *Id.* at 5A-5C.

2

(2)     that he was deprived of a fair trial when "other acts" testimony on his alleged physical abuse of the victim children during discipline, as well as testimony concerning other acts of sexual abuse against a daughter not named here as a victim, was permitted at trial;[5]

(3)     that he was further deprived of a fair trial when the state was permitted to make use of the other acts testimony during the trial and during closing arguments;[6] and,

(4)     that he was also deprived of a fair trial when it was determined that a four year-old child and a six year-old child were competent to testify against him.[7]

The State, in its return of the writ, argues, as to each of the specified grounds for

relief:

(1)     that the state appeals court found that Krzywkowski's trial counsel was not ineffective in declining to seek an independent defense expert, instead, tactically electing to impeach the state's expert through cross-examination, and that such a finding is not an unreasonable application of the clearly established federal law of *Strickland v. Washington*;[8]

(2)(3)   that the admission of evidence, such as the other acts evidence, is fundamentally a matter of state law and so not cognizable in a federal habeas matter, except where the alleged error results in a denial of fundamental fairness, which is not present here;[9] and,

---

[5] *Id.* at 6A.

[6] *Id*. at 8A-8B.

[7] *Id*. at 9A-9B

[8] ECF # 9 at 24-30.

[9] *Id.* at 30-35.

(4)     that ground four – the alleged error in permitting the testimony of minors – was never fairly presented to Ohio courts as a federal constitution issue and thus procedurally defaulted here, since it was posited and reviewed on direct appeal solely as an error of Ohio law.[10]

Krzywkowski, in his traverse, maintains:

(1)     that because only independent testimony from a defense expert, not cross-examination of the state's witness, could effectively and directly refute the state's expert,[11] the state appeals court did not reasonably apply *Strickland*;[12]

(2)(3)  that the evidentiary errors here were such as to deny him a fundamentally fair trial and so may be addressed by a federal habeas court;[13] and,

(4)     that although ground four is procedurally defaulted for not being fairly presented to Ohio courts as a federal claim, the ineffectiveness of Kryzwkowski's appellate counsel, who failed to properly frame the issues on appeal, provides cause to excuse the procedural default and then address the issue in this Court.[14]

Krzywkowski, in the traverse, also seeks an evidentiary hearing on whether presentation of the proposed testimony of his expert at trial – the substance of ground one – would have resulted in a different outcome.[15]

---

[10] *Id.* at 35-45.

[11] *See*, ECF # 13 at 20.

[12] *Id.* at 8-22.

[13] *Id*. at 22-30.

[14] *Id*. at 30-40.

[15] *Id.* at 21-22.

For the reasons that follow, I recommend finding:

(1)     that the decision of the state appeals court as to ground one –
        ineffectiveness of trial counsel – was not an unreasonable application
        of the clearly established federal law of *Strickland*, thus ground one
        should be denied;

(2)(3)  that the state appeals court's decisions as to grounds two and three – the
        admission and use of other acts evidence – related to state law matters,
        not cognizable in this forum, and that Krzywkowski has not established
        that the state court decisions rendered his trial "fundamentally unfair"
        as that term is defined by the United States Supreme Court, and thus
        these claims should be dismissed; and,

(4)     that by not presenting ground four to Ohio courts as a federal claim,
        Krzywkowski has procedurally defaulted this claim and further that he
        cannot provide cause for that default by making an argument —
        ineffectiveness of appellate counsel – that was rejected in Ohio courts,
        and so this claim should also be dismissed.

Moreover, if these recommendations are adopted by the District Court, I recommend

that Krzywkowski's motion for an evidentiary hearing, contained within this petition as part

of ground one, be denied since he would then have shown no basis to succeed with his claim

in ground one.

## Facts

### A.     The underlying offenses and trial

The facts of the underlying offenses and relevant trial testimony were found by the

Ohio appeals court[16] to be as follows:

---

[16] Factual findings made by a state appeals court on its review of the state trial record
are presumed correct by a federal habeas court pursuant to 28 U.S.C. § 2254(e)(1). *Brumley
v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

5

At trial, the prosecution presented testimony of Sharon Harpel, the foster mother of Kristen and Katelyn ("Katie") Krzywkowski. Sharon testified that in July of 2000, the girls were placed in her therapeutic foster home. At the time of placement, Kristen was five years old and Katie was two. Sharon testified that within weeks of being placed, Kristen frequently disclosed to Sharon incidents of sexual and physical abuse by her father. Sharon testified that when the girls first moved in, they would eat incessantly and hoard food. She testified that Kristen was terrified of not getting enough food.

Sharon testified that on one occasion when the girls were playing together in the playroom, she went into the kitchen. She noticed that it had gotten very quiet in the playroom, which was quite unusual for the girls, who generally did not interact well with one another and regularly fought and screamed while playing together. When Sharon entered the room, she found Kristen taking her hands and digging into Katie's diaper and private area as Katie was laying on the floor with her legs spread open in a frog-like position. When Sharon questioned Katie about what she was doing to Katie and why she was doing it, Kristen allegedly responded that when her dad would get mad at them, he would take his four fingers and stick them in Katie's private part or poke them in the butt with toys. Kristen further disclosed that on one occasion, her dad tried to put the "hard part of his body" in her private area and that it hurt.

Sharon also testified that Kristen had terrible nightmares every night when she first arrived at the home. When Sharon would go in to comfort Kristen, Kristen stated on one occasion that she was afraid her mother and father were in the closet "waiting to get her." Sharon testified that while Kristen still has nightmares, they are less frequent than they were when she first arrived in Sharon's home.

Sharon testified that approximately two weeks after being placed, she took the girls to Cedar Point. She recalled an incident at the pool when Kristen, upon hearing music, went up to the bars attached to the pool used to assist people in getting in and out of the pool, and began "humping" the bars and rubbing up against them. Sharon testified that the behavior mirrored that of a professional dancer. When Sharon tried to redirect Kristen to the pool at that point, Kristen's behavior changed, and she began screaming and yelling while continuing to hump the bars. Eventually, Kristen calmed down at which point Kristen went into a "trans-like" state. Sharon stated that this type of behavior happened on another occasion on the flagpole in Sharon's front yard.

Sharon testified that Kristen exhibited behavior that was sexual in nature when she would bathe Kristen. She stated that Kristen would masturbate every time

she took a bath, which was almost daily. Sharon further stated that after Kristen was put to bed for the evening, she would often find Kristen masturbating in bed.

Sharon testified that when Kristen first arrived at the home and would go to kiss Sharon, she would open her mouth and attempt to stick her tongue in Sharon's mouth. Kristen told Sharon that that was the manner in which her mother and father wanted her to kiss them. Sharon stated that she had to teach Kristen how to kiss her appropriately. She had to further teach Kristen that it was inappropriate for Kristen to attempt to fondle Sharon's breasts.

Sharon testified that when the girls were in her home, they initially reacted violently toward the dogs and cats in the house. She recounted that on occasion, Kristen actually became mad, picked the cat up and threw it across the kitchen and against the wall.

Sharon testified that she documented Kristen's behavior by taking notes and submitted them to Specialized Alternative for Family and Youth (SAFY), the foster care agency with whom she worked.

On cross-examination, Sharon stated that she was testifying from her memory of events that transpired over the last year. She admitted that when the children were brought to her home, she did not observe any physical signs of abuse. She also stated that Kristen made allegations of abuse by her mother and other family members.

After being found competent to testify, the state presented Kristen's testimony. She stated that her father did "bad stuff" to her. When questioned further, Kristen testified that her mom and dad frequently locked her in the attic when she was bad. Kristen then stated that she was bad when she didn't listen. Kristen also testified that her father would stick his four fingers in her butt and poke her after pulling her pants down and undressing her. She stated that the first time, he stuck toys, such as play spoons and forks, in her butt and her "crack." She testified that her father stuck his fingers in her private parts on several occasions. She also recounted a story when she witnessed her father take off Katie's diaper and touch Katie's private parts.

Kristen stated that her father made her watch a dirty, nasty movie in which the characters stuck their tongues in each other mouths with no clothes on. She stated that her father forced her to watch the movie by herself. She further stated that this was a "vampire" movie. Kristen testified that her father taught

7

her to stick her tongue in somebody's mouth when she kissed them, but she testified that he never kissed her in that way.

When asked what her dad did to her that she didn't like, Kristen responded by testifying that on one occasion when she was bad, her father hit her in the head with a wrench and blood got all over her pillow. Kristen stated that she was told by her father to fabricate a story to tell her mother regarding the incident, so that her mother would not find out that her father hit her. Kristen also testified that as a punishment her father tied her up at night and wouldn't release her until the morning. Kristen further testified that her father would pull down Aaron's and Ryan's pants and spank them with a belt when they were bad.

Kristen testified that she loved her father, but did not want to live with him again because she did not want him to do bad things to her again.

Elizabeth Alexander, the foster mother of Aaron and Ryan, testified for the state on direct examination that when Ryan first came to her home, he was very hyperactive, did not interact well with family members, was obsessed with mutilating insects, walked around naked, tortured kittens that were living at the home, and on one occasion tried to suffocate one of the kittens. Elizabeth also testified that Ryan killed the family's guinea pig by taking a long stick and poking it down the guinea pig's mouth. Elizabeth and Ryan buried the guinea pig and put the dead body in the garbage. Later, Elizabeth found that Ryan had gone through the garbage to find the carcass and was playing with it by repeatedly holding it up in the air and allowing it to hit the concrete.

While in foster care, Ryan pulled his pants down and exposed his penis to another foster child in the home. Elizabeth testified that Ryan was physically aggressive and sometimes exhibited violent behavior, particularly when he was angered.

Elizabeth testified regarding other behaviors that Ryan had exhibited when he first arrived at her home. She stated that Ryan was obsessed with food. She also testified that Ryan, who very much enjoys drawing and frequently drew pictures of penises and penises ejaculating. Elizabeth testified that Ryan frequently masturbated while bathing and that his genitals were sore from masturbating. Further, she stated that she no longer allowed Ryan to play with toys in the tub because on one occasion, she observed him trying to put a toy in his rectum.

8

Elizabeth testified that while cleaning the kitchen one day, she heard Ryan say to Aaron "let's play spider and fly." A few minutes later, she heard Ryan ask Aaron "does it feel good." At that point, she went to check to see what the boys were doing and found Aaron at the end of the couch on his back with Ryan on top of him. Ryan had his penis in Aaron's mouth and Ryan was moving back and forth in a sexual manner. After Elizabeth explained that that was inappropriate behavior, she asked Ryan what he was doing. Ryan replied that he was playing spider and fly and went on to explain that this was a game he played with his father. Elizabeth then testified that Ryan's behavior has improved significantly since he first arrived in her home.

Elizabeth testified with regard to Aaron's behavior in the foster home. She stated that he, too, exhibited inappropriate behavior, such as running through the house naked, bringing attention to his penis and being extremely abusive with the animals. Aaron disclosed sexual abuse to Elizabeth and on one occasion stated that his father put his pee in his butt. Aaron further disclosed that his dad peed in his mouth and put his peanuts in his mouth. Elizabeth testified that she suspected the boys were sexually abused based on these behaviors. In particular, she found the boys hiding under a blanket fondling one another. She also noted that when Aaron would hug her, he would try to touch her breasts.

On cross-examination, Elizabeth admitted that she never found any physical signs of abuse, that many foster children exhibit similar behaviors as the Krzywkowski children and that not all of those foster children had been victims of sexual abuse.

After the court determined him to be competent, Aaron testified that he knew he was in court to testify because his father had done bad stuff to him. When asked what his father did to him that he did not like, Aaron initially answered that he "forgot." He later testified that while he was living with his father and they were in the kitchen, his father put something white in his "private part that poops" and on his nose. Aaron stated that it hurt a lot and he cried a lot when his dad did that. Aaron was unable to answer why his dad put white stuff on his nose and in his butt, stating "I was being good but he just did it."(T. 1367) Aaron also testified that his dad tried to put his private part in Aaron's mouth.

Aaron testified that a "papoose" was something that he was tied up in once, while his father put two socks in his mouth. He was unable to state why his father did this to him. Aaron testified that he did play the spider and fly game with his father, which he did not like. He further testified that he never played the spider and fly game with his brother Ryan.

9

Ryan then testified after being found competent by the trial judge. He stated that he and his father frequently played games together, including video games and "spider and fly." Ryan described the spider and fly game much differently than his foster mother had described it. His description was non-sexual in nature, and he stated that he enjoyed playing the game. He denied that there was another way of playing spider and fly with his dad. He further denied playing spider and fly at Elizabeth's house in the way she had described it.

Ryan testified that his dad was a good dad and that he loved him very much. While he admitted to being disciplined once by being "papoose" and being made to stand in the corner on several occasions, in addition to several other corporal punishment techniques testified to, he denied any allegations of sexual abuse by his father. Ryan stated that his father never put his penis near Ryan's face, that his dad never told him to suck his penis, and that his dad never made Aaron suck on his penis. Ryan stated that he has never seen his fathers penis, or any of his fathers private parts. Ryan then testified that he did see his dad put white stuff on Aaron's nose and in his butt. He testified that this white stuff was medicine. He stated that he never witnessed his father doing anything bad to his brother or sisters, and if anyone said his father did anything sexual in nature, they were lying. Ryan also stated that he would like to live with his father again.

Ryan denied ever trying to suffocate or hurt any of the kittens at Elizabeth's house. He further denied mutilating any insects or butterflies, or drawing pictures of penises while living with Elizabeth.

The state presented testimony of Dr. David W. Gemmill, an employee of Mercy Children's Hospital in Toledo, where the children were taken for a sexual abuse evaluation. Dr. Gemmill has specialized in sexual abuse evaluations and treatment for the last fifteen years of his forty-two years in practicing medicine. He testified in regard to the process that is employed when children are brought in for evaluation. Dr. Gemmill explained the children are brought in for an historical evaluation, conducted by either Dr. Gemmill, a nurse practitioner or a trained social worker. In this interview, they collect historical information submitted by the referring agency and glean it from interviews with children and sometimes their care givers.

Dr. Gemmill testified that after historical information is gathered, the next step is to conduct a physical examination to detect any signs of abuse. He described at great length the process for so doing and noted that many times they are unable to detect signs of sexual abuse, unless the abuse happened within a few

10

days prior to the visit. Dr. Gemmill explained that usually children's bodies heal relatively quick.

Dr. Gemmill and his staff conducted evaluations and examinations on the Krzywkowski children. He thereafter prepared two reports, one regarding the girls and one regarding the boys.

With regard to the girls, Dr. Gemmill testified that Darla Vogelpohl, a nurse practitioner, took the history of Kristen while Sharon was present. Immediately after the history was taken, Darla met with Dr. Gemmill for a briefing prior to Kristen's medical examination. After conducting a medical examination, Dr. Gemmill noted that he did not detect any abnormalities that would indicate physical signs of sexual abuse. After reviewing her historical information and conducting a medical examination, Dr. Gemmill opined that there had been inappropriate contact with Kristen which would indicate sexual molestation and physical abuse. He further testified seventy-five percent of his diagnosis was based on the history that was given to them.

With regard to the evaluations and examinations of the boys, Dr. Gemmill testified that after conducting a physical examination, during which he did not find physical signs of sexual abuse, he opined that there was "inappropriate stuff" going on, probably more physical abuse than sexual abuse.

Dr. Gemmill testified that Ryan did not offer much in the way of historical information, nor did Elizabeth, who was present at the time of the interview. Dr. Gemmill testified that he conducted the medical examination of Ryan and found folliculitis across his buttocks, which could have been explained by his bed-wetting problem. He further testified that after completing the process with Ryan, there was sufficient information indicating sexual molestation.

Dr. Gemmill testified that it is quite common for children to recant allegations of sexual abuse, especially when there is no support coming from the family. He stated that there exists a variety of reasons for a child to recant an earlier allegation of abuse, including when there is little family support or where the child feels as if his "world is tumbling down" because of his or her disclosures.

On cross-examination, Dr. Gemmill testified that at the time of his evaluations of the children, he did not have access to any previous medical records of any of the children. He stated that since then, he has not seen any other reports, other than one report from a consultant who examined Kristen for an eye condition.

11

Dr. Gemmill admitted on cross-examination that white medicine called Desitin is frequently used to treat a child who has a rash from bed-wetting, which could possibly explain the testimony that the defendant put white stuff in Aaron's buttocks and his nose.

The state then presented the testimony of Diane Marx, an employee of SAFY at the time the Krzywkowski children were placed in foster care. She was assigned to monitor the progress of the children in the foster homes. She stated that certain behaviors of the children were brought to her attention, such as Kristen biting herself, that she was masturbating daily, and that she was having night terrors, and disclosing information indicating that her father had physically and sexually abused her. Upon learning this information, Ms. Marx contacted the county social worker and called the child abuse hotline, at which time the children were taken in for an interview with Julie Prettyman, a social worker for the county in the intake department.

The state presented the testimony of Julie Prettyman. Ms. Prettyman stated that her role in the intake department was to investigate specific allegations of sexual abuse of children and to interview the children to assess a child's needs in terms of safety and whether the child will need medical treatment and/or counseling. She testified that she interviewed Kristen and Aaron to assess the need for safety requirements, to assess the allegations, and to determine if any follow-up treatment was necessary for them. Ms. Prettyman stated that during the interview, Kristen disclosed instances of abuse to her by her father. She told Ms. Prettyman that he had locked her in a room, made her sit, stand, squat, clean the walls, and that he had at times penetrated her anus and private part with his fingers. Kristen also told Ms. Prettyman that her dad made her watch dirty movies that were disgusting, he kissed her inappropriately by putting his tongue in her mouth, and that there were times when she saw her parents have sex. Kristen further disclosed that she had witnessed her dad touching her siblings in the same way that she was touched. She disclosed that she had been penetrated and stated "Dad stuck his private in my butt, in my private, and it hurt and it was red and it was hard and it smelled like poop."(T. 1655) At this time, Ms. Prettyman recommended an immediate evaluation of the children.

Ms. Prettyman stated that Aaron did not make any disclosures to her regarding sexual abuse when she interviewed him. He did, however, make disclosures regarding physical abuse. Ms. Prettyman testified that, after interviewing both children, she noted that sexual abuse was "indicated." [FN1]

12

> FN1. Cuyahoga County Department of Children and Family Services makes determinations in cases that allegations of sexual and physical abuse are either "substantiated," "unsubstantiated," or "indicated."

Darla Vogelpohl was called as a state's witness. She testified that, upon taking a history of Kristen, Kristen disclosed several instances of sexual abuse by her father, all of which had been testified to at this point in the trial.

The state also presented testimony of expert social worker Cynthia King. Ms. King never interviewed the Krzywkowski children, nor had she ever met them. She testified that there are recognized behavior indicators of children that have been sexually abused, including: bed-wetting, acting out a sexual act with a doll or stuff animal, excessive masturbation, fondling other children, Ms. King also testified that physical signs of sexual abuse are generally only found in twenty to twenty-five percent of children.

Ms. King opined that the behaviors exhibited by the Krzywkowski children were consistent with those behaviors that are indicative of sexual abuse. She testified to specific incidents of sexual abuse that had already been testified to at trial by other witnesses for the state.

The jury returned a verdict of guilty of four counts of rape and two counts of gross sexual imposition and sentenced him accordingly. It is from this ruling that the defendant now appeals, asserting eight assignments of error for our review.[17]

Krzywkowski was convicted and sentenced in a judgment entered on September 19, 2001.[18]

---

[17] *State v. Krzywkowski*, No. 80392, 2002 WL 1987257, at **1-7 (Ohio App. 8th Dist., Aug. 29, 2002).  A copy of the Westlaw reporting of this opinion is furnished here for the convenience of the District Judge.

[18] ECF # 1 at 1.

13

**B.    Direct appeal**

*(1)    The Ohio court of appeals*

On October 18, 2001, acting through new counsel,[19] Krzywkowski timely filed[20] a

direct appeal from this conviction.[21]  In the appeal,[22] Krzywkowski raised eight assignments

of error:

    1.      Prejudicial error was committed by the admission of "other acts" testimony in violation of R.C. 2945.59, Evid. R. 404(B), and Mr. Krzywkowski's rights under Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

    2.      The misconduct of the prosecutor violated Mr. Krzywkowski's rights to a fair trial guaranteed by the Due Process provisions of Article I, Section 16 of the Ohio Constitution, and the Fourteenth Amendment to the United States Constitution.

    3.      The trial court erred in finding the children competent to testify when the trial court did not consider the five factors required in *State v. Frazier* (1991), 61 Ohio St. 3d 247.

---

[19] Michael T. Fisher represented Krzywkowski on direct appeal; Michael O'Shea and Michael Goldberg represented him at trial; *see id*. at 12.

[20] Ohio App. R. 4 provides that a direct appeal must be filed within 30 days of the entry of the judgment being appealed.

[21] ECF # 9, Ex. 5 (notice of appeal).

[22] ECF # 9, Exs. 6-8 (appellant's brief).  The State's submission of the record was not as consecutively numbered Bates-stamped pages, as required in my Show Cause Order.  *See*, ECF # 6 at 1.  Rather, the State affixed a single exhibit number to each document, including documents containing a significant number of pages.  Consequently, when filed in the Court's Electronic Case File format, such lengthy documents sometimes extend over multiple ECF file numbers.  Thus, while the State, as here, refers to, and has labeled, Krzywkowski's appellate brief as "Exhibit 6," that same document appears in this Court's ECF file as Exhibits 6-8.  Citations here are to the ECF format.

4.      The trial court erred in denying defense counsel the right to participate in an examination of witness' statements as provided by Criminal Rule 16(B)(1)(g).

5.      The trial court erred in permitting the opinion testimony of a medical doctor without permitting defense counsel the right to examine the medical records relied upon by the witness.

6.      The trial court erred by permitting a social worker to testify regarding the conduct of the Kryzwkowski children, when the witness had neither interviewed nor examined the children.

7.      The trial court erred by permitting the hearsay recitation of information by the social worker who's [sic] participation in the case consisted of neither treatment nor diagnosis of the declarant children.

8.      Mr. Krzywkowski is entitled to a new trial because the verdicts are against the weight of the evidence.[23]

The State filed a brief in opposition,[24] to which Krzywkowski filed a reply.[25]  The Ohio court of appeals then denied all of Krzywkowski's assignments of error, affirming his conviction.[26]  A motion for reconsideration of this decision filed by Krzywkowski[27] was denied without opinion.[28]

---

[23] *Id.*, Ex. 6 at iv.

[24] ECF # 9, Exs. 9-12 (appellee's brief).

[25] ECF # 9, Exs. 13-14 (appellant's reply brief).

[26] ECF # 9, Ex. 15 (opinion of the Ohio appeals court) at 35; *see also*, *Krzywkowski*, 2002 WL 1987257, at *15.

[27] ECF # 9, Ex. 16.

[28] ECF # 9, Ex. 17.

*(2)*    ***The Supreme Court of Ohio***

Krzywkowski, acting once again through new counsel,[29] thereupon filed a notice of appeal and jurisdictional memorandum with the Ohio Supreme Court.[30]  In his jurisdictional memorandum, Krzywkowski asserted the following eight propositions of law:

1. Evidence of other acts is inadmissible unless it complies with Ohio Rule of Evidence 404(B).

2. The prosecutor commits misconduct when he introduces inadmissible other acts evidence of corporal punishment and then comments on that argument in closing argument.

3. A child witness is not deemed competent to testify because they took a "pinky promise" and "promise real hard to tell the truth."

4. The defendant is deprived of an opportunity to participate in the examination of a witness when the witness' statement is not provided as required by Criminal Rule 16(B)(1)(g).

5. A medical doctor cannot present opinion testimony without complying with Ohio Evidence Rule 705.

6. When a social worker has neither interviewed nor examined the victims, it is error for the trial court to allow that witness to testify regarding conduct of those victims.

7. Evid. R. 803(4) prohibits social workers from testifying to hearsay recitation of information regarding victims when that witnesses [sic] participation in the case was not for treatment or diagnosis of the victims.

---

[29] Krzywkowski was represented by Assistant Ohio Public Defender Molly Bruns for the appeal to the Ohio Supreme Court.  ECF # 1 at 12.  Attorney Bruns has represented Krzywkowski in all subsequent proceedings including this petition.

[30] ECF # 9, Exs. 19-20.

16

8.      A defendant is deprived of effective assistance of appellate counsel when appellate counsel fails to federalize claims.[31]

The State filed a response,[32] and the Supreme Court of Ohio on January 29, 2003 denied leave to appeal, dismissing the appeal as not involving any substantial constitutional question.[33]

## C.      Rule 26(B) proceedings

While his motion to have his direct appeal heard by the Ohio Supreme Court was still pending before that Court, Krzywkowski, through counsel, filed an application in the Ohio appeals court pursuant to Ohio Appellate Rule 26(B) to reopen his direct appeal.[34]  In that application, Krzywkowski set forth the following four assignments of error as justifying reopening of the appeal:

1.      Grady Krzywkowski was denied his constitutional right to the effective assistance of trial counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

2.      The trial court erroneously allowed inadmissable hearsay testimony to plague Grady Krzywkowski's trial despite continuing objections from trial counsel in violation of Grady Krzywkowski's right to due process and a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

---

[31] ECF # 9, Ex. 20 at i-ii.

[32] ECF # 9, Ex. 21.

[33] ECF # 9, Ex. 22.

[34] ECF # 9, Ex. 23.

17

3.      The trial court erred in denying Grady Krzywkowski's motion for aquittal because there was insufficient evidence to prove he was guilty of sexually abusing Kristen and Aaron Krzywkowski in violation of his rights to due process and a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

4.      Appellate counsel was ineffective because he failed to cite relevant constitutional provisions and United States Supreme Court decisions in support of his claims.[35]

Although the State apparently did not file a brief in response to Krzywkowski's motion to reopen, the Ohio appeals court denied the motion.[36]  In its opinion, the appellate court initially found that Krzywkowski's claims were barred by *res judicata*, since they had already been raised before the Ohio Supreme Court and rejected.[37]  Moreover, in a detailed analysis, the appeals court rejected Krzywkowski's contention that it would be unjust to apply *res judicata* here, citing to United States and Ohio Supreme Court authority that rejection of ineffective assistance of appellate counsel claims by the Ohio Supreme Court, even by a decision without an opinion, is a proper basis for later invocation of *res judicata* by a subsequent appeals court in a Rule 26(B) proceeding.[38] The appeals court then, alternatively, proceeded to analyze Krzywkowski's individual claims on the merits.[39]

---

[35] ECF # 9, Ex. 23 at 2-7.

[36] ECF # 9, Ex. 18.

[37] *See*, *State v. Krzywkowski*, No. 80392, 2003 WL 21356731, at *1 (Ohio App. 8th Dist. June 12, 2003).  A copy of the Westlaw reporting of this opinion is furnished here for the convenience of the District Judge.

[38] *Id.*

[39] *Id.*, at *2.

18

Specifically, the Ohio court of appeals, after noting that *Strickland* provides the basis for evaluating claims of ineffective assistance of appellate counsel as well as of trial counsel,[40] concluded that Krzywkowski's appellate attorney was not ineffective.  In a detailed treatment of Krzywkowski's claims, the court observed that Krzywkowski's trial counsel had made "strategic and tactical decisions," which would not be second-guessed, as to how to deal with trial testimony.[41]  In such circumstances, the court reasoned that "it is understandable why appellate counsel would not want to pose an argument [on appeal] micro-analyzing trial counsel's" decisions.[42]  Further, the court found that appellate counsel could not be faulted for being ineffective for not asserting certain claims where he could foresee the State's response to those arguments and concluded that the arguments would be weak.[43]  Finally, the court, after again directly stating review of the claim was barred by *res judicata*, noted that an "appellate counsel is not deficient for failing to federalize every argument."[44]

---

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*  "This court will not second-guess appellate counsel's strategic and tactical decisions to argue the above points and not [the others]."

[44] *Id.*, at *4 (citations omitted).

19

Krzywkowski then filed a notice of appeal with the Ohio Supreme Court of the appellate court's denial of his Rule 26(B) application.[45] In his jurisdictional memorandum, he raised the following two propositions of law:

      1.     Appellate counsel is deficient for failing to raise errors that would have resulted in the reversal of the defendant's conviction.

      2.     Appellate counsel is ineffective for failing to cite relevant constitutional provisions and United States Supreme Court decisions in support of appellant's claims.[46]

The State replied, opposing Krzywkowski's motion for leave to appeal,[47] and the Ohio Supreme Court on October 8, 2003 denied leave to appeal, dismissing Krzywkowski's appeal as not involving any substantial constitutional question.[48]

## D.    Post-conviction proceedings

While his direct appeal was pending at the Ohio court of appeals, Krzywkowski filed a petition for post-conviction relief with the trial court.[49]  In the sole ground for relief in his motion to vacate and set aside the judgment, and, for an evidentiary hearing, Krzywkowski argued:

      1.     Defense counsel provided ineffective assistance of counsel in failing to seek the testimony of an expert witness to rebut the testimony of the state's witness.  Thus, Krzywkowski's convictions and sentences are

---

[45] ECF # 9, Ex. 27.

[46] ECF # 9, Ex. 28 at i.

[47] ECF # 9, Ex. 29.

[48] ECF # 9, Ex. 30.

[49] ECF # 9, Exs. 31-32.

voidable because he did not receive effective assistance of counsel at trial, and he was denied his rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I, Ohio Constitution.[50]

The State thereupon sought to dismiss Krzywkowski's motion, contending that consideration of the issue of ineffectiveness by trial counsel should be precluded by *res judicata* since that matter could have been raised on direct appeal given that Krzywkowski was represented on appeal by different counsel than his trial counsel.[51] Krzywkowski filed a response,[52] maintaining that because proof that his trial counsel was ineffective requires an evidentiary hearing and consideration of evidence dehors the trial record, *res judicata* should not bar consideration of his claim.[53] The trial court then, without opinion, granted the State's motion and dismissed Krzywkowski's post-conviction petition.[54]

Krzywkowski then sought relief from that judgment of dismissal pursuant to Ohio Rule of Civil Procedure 60(B).[55] The State filed its opposition to Kryzwkowski's motion for relief from judgment,[56] to which Krzywkowski replied.[57] The trial court denied the 60(B)

---

[50] *Id.*, Ex. 31 at 6.

[51] ECF # 9, Ex. 33 at 11.

[52] ECF #9, Ex. 35.

[53] *Id.* at 2-3.

[54] ECF # 9, Ex. 36.

[55] ECF # 9, Ex.37.

[56] ECF # 9, Ex. 38.

[57] ECF # 9, Ex. 39.

motion[58] and then issued findings of fact and conclusions of law holding that *res judicata* barred the granting of Krzywkowski's Rule 60(B) motion because:  (1) the ineffective assistance claim could have been brought on direct appeal;[59] and (2) the evidence that Krzywkowski contended required a hearing and was dehors the record merely established that his expert could have assisted trial counsel in conducting cross-examination, thus failing to be a basis for overcoming the finding of *res judicata*.[60]

Krzywkowski filed a notice of appeal from this decision denying post-conviction relief.[61]  After being subsequently consolidated with other appeals by Krzywkowski from the trial court's denial of other motions,[62] Krzywkowski filed a brief in the consolidated appeal raising the following three assignments of error:

1. The trial court erred in applying the doctrine of *res judicata* to Krzywkowski's claim for relief, thus violating Krzywkowski's constitutional rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and Sections 5 and 16, Article I of the Ohio Constitution.

2. The trial court erred in dismissing Krzywkowski's petition without an evidentiary hearing because Krzywkowski provided sufficient evidence that he was denied the effective assistance of counsel.

---

[58] ECF # 9, Ex. 40.

[59] ECF # 9, Ex. 41 at 10.

[60] *Id*. at 11.

[61] ECF # 9, Ex. 42.

[62] ECF # 9, Ex. 50 (motion to consolidate) and Ex. 50 (granting motion); s*ee also*, ECF # 9 at 16 n.5.

22

3. The trial court erred in denying Grady Krzywkowski's petition for state post-conviction relief because Krzywkowski established that he was deprived of his right to the effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution.[63]

The State filed its appellee's brief,[64] to which Krzywkowski filed a reply.[65] The Ohio appeals court then affirmed the trial court's denial of post-conviction relief.[66]

In its opinion, the state appellate court agreed with Krzywkowski that the affidavit from the expert he proposed should have been called did constitute evidence dehors the record that would preclude the operation of *res judicata*, but the appeals court further held that the trial court was correct in finding that, nonetheless, Krzywkowski did not meet his burden of showing ineffective assistance by his trial counsel and thus no evidentiary hearing was required.[67]

Specifically, the court noted that the decision in a criminal case as to whether to call an independent defense expert or rely on cross-examination of the state's expert is a tactical one that does not *per se* deprive a defendant of effective assistance of counsel and, moreover,

---

[63] ECF # 9, Ex. 43 at i.

[64] ECF # 9, Exs. 47-49. This exhibit appears to have been filed in this Court's ECF system, but is not fully retrievable, with only the brief's attachments (Exs. 48 and 49) now viewable.

[65] ECF # 9, Ex. 52.

[66] ECF # 9, Ex. 53; see also, *State v. Krzywkowski*, Nos. 83599, 83842, 84056, 2004 WL 2535568 (Ohio App. 8th Dist. Nov. 10, 2004). A copy of the Westlaw reporting of this opinion is furnished here for the convenience of the District Judge.

[67] *Krzywkowski*, 2004 WL 2535568, at *3.

even a choice to not seek a defense expert is a defensible tactical choice since the expert may

uncover evidence that actually further inculpates the defendant.[68]

Lastly, the court observed that nothing about the proposed expert testimony, which

was not based on an independent evaluation of the victims, but on "statistics and generalities

concerning children who are sexually abused and standards of scientific methodology,"

established that this testimony would have changed the outcome of the trial.[69]

Krzywkowski filed a motion for reconsideration of this decision,[70] which the appellate

court denied without opinion.[71]

Krzywkowski thereupon filed a notice of appeal with the Supreme Court of Ohio.[72]

In his jurisdictional memorandum, Krzywkowski asserted the following two propositions of

law:

1.    The trial court's refusal to conduct an evidentiary hearing in a
post-conviction case, when the petition and the supporting documentary
evidence demonstrate substantive grounds for relief deprives petitioner
of due process and equal protection as guaranteed by the Fifth and
Fourteenth Amendments to the United States Constitution, and
Sections 10 and 16, Article I of the Ohio Constitution.

2.    When there is a reasonable probability that the testimony of an expert
witness would have changed the outcome of a case and counsel fails to
hire an expert witness to assist in the defense, trial counsel renders

---

[68] *Id*., at *4.

[69] *Id.*, at **4-5.

[70] ECF # 9, Ex. 54.

[71] ECF # 9, Ex. 55.

[72] ECF # 9, Ex. 57.

ineffective assistance as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Sections 2, 10 and 16, Article I, of the Ohio Constitution.[73]

Without the State filing a response, the Supreme Court of Ohio denied Krzywkowski leave to appeal, dismissing his appeal on April 27, 2005 as not involving a substantial constitutional question.[74]

## E.   Federal habeas corpus

### *(1)   The petition*

On April 27, 2006, Krzywkowski filed the present petition for federal habeas relief.[75]

In that petition, he raises the following four grounds for relief:

1.   Grady Krzywkowski was deprived of his right to the effective assistance of counsel when trial counsel failed to present a defense, specifically seek the testimony of an expert witness to rebut the testimony of the state's witness at Mr. Krzywkowski's trial, in contravention of the Sixth and Fourteenth Amendments to the United States Constitution.[76]

---

[73] ECF # 9, Ex. 58 at i.

[74] ECF # 9, Ex. 59.

[75] ECF # 1. Because Krzywkowski raised issues concerning the ineffectiveness of counsel in his Rule 26(B) application and in his properly filed post-conviction motions, the one-year statute of limitations for federal habeas filings was tolled during the pendency of these proceedings. *See*, *Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir.2000) (Rule 26(B) proceedings); *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003) (post-conviction petitions).  Since all appeals appear to have been timely filed, Krzywkowski seems to have tolled the commencement of the one-year limitations period of 28 U.S.C. § 2244(d)(1) until April 27, 2005, making the filing of this petition on April 27, 2006 timely.

[76] *Id.* at 5C.

2.    Grady Krzywkowski was deprived of his right to a fair trial when prejudiced "other acts" testimony, alleged physical abuse of Mr. Krzywkowski's children and alleged sexual abuse against one of Mr. Krzywkowski's children, was admitted at Mr. Krzywkowski's trial when that physical and sexual abuse evidence was not tied to the offenses alleged in the indictment, in contravention of the Fifth and Fourteenth Amendments to the United States Constitution.[77]

3.    Grady Krzywkowski was deprived of his right to a fair trial, when the state was permitted to rely on prejudicial "other acts" testimony throughout the trial and closing arguments, in contravention of the Fifth and Fourteenth Amendments to the United States Constitution.[78]

4.    The trial court violated Mr. Krzywkowski's right to a fair trial, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, when it determined that four-year-old and six-year-old witnesses were competent to testify.[79]

**(2)    *State's return of the writ***

The State in its return argued that:

(1)    ground one, the ineffective assistance of trial counsel claim, should be denied inasmuch as the state appeals court's decision denying the claim was not an unreasonable application of *Strickland*;[80]

(2)    ground two, the admission of "other acts" evidence, and ground three, the commentary on that evidence at trial, should be denied as non-cognizable state law claims;[81] and,

---

[77] *Id.* at 6A.

[78] *Id.* at 8A.

[79] *Id.* at 9A.

[80] ECF # 9 at 26-30.

[81] *Id.* at 33-35.

(3)     ground four, the permission for minor children to testify, should be denied because it was never fairly presented as a federal claim in Krzywkowski's direct appeal or, alternatively, is non-cognizable as a state law claim.[82]

*(3)*     ***Traverse***

In his traverse, Krzywkowski contends:

(1)     that relief under ground one should be granted as the state appellate court's decision to the contrary was an unreasonable application of *Strickland*, since it did not properly assess that had the uncalled defense expert's testimony been presented at trial, "there is at least a reasonable probability that the outcome of these proceedings would have been different, because no longer would the opinion of the State's expert witness be controlling;"[83]

(2)     that grounds two and three relating to the admission of, and comments on, "other acts" evidence do provide a basis for federal habeas relief because the errors were "so egregious that [they] nullified the legitimacy of the properly admitted substantive evidence of the petitioner's guilt;"[84] and,

(3)     the failure to cast ground four as a federal claim in the state appellate proceedings was due to ineffective appellate counsel, so any procedural default should be excused[85] and the underlying error of admitting the testimony of minors should provide grounds for relief.[86]

---

[82] *Id*. at 35-50.

[83] ECF # 13 at 21.

[84] *Id*. at 26.

[85] *Id.* at 30-32.

[86] *Id.* at 32-40.

# Analysis

## A.    Standards of review

### *(1)    Unreasonable application of clearly established federal law*

28 U.S.C. § 2254(d)(1) states, in relevant part, that an application for habeas relief shall not be granted with respect to any claim that was adjudicated on the merits in state court, unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

Under the "contrary to" clause, a federal habeas court may grant relief if the state court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the United States Supreme Court on materially indistinguishable facts.[87]

Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identified the correct governing legal principle from the decisions of the United States Supreme Court but unreasonably applied that principle to the facts of the petitioner's case.[88]  The proper inquiry is whether the state court's decision was "objectively unreasonable," not merely erroneous or incorrect.[89]

---

[87] *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

[88] *Id.* at 407-08.

[89] *Id.* at 409-11.

28

*(2)*     ***Ineffective assistance of counsel***

To establish ineffective assistance of counsel as a basis for habeas relief, a petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced petitioner's defense such that his trial was unfair and its result unreliable.[90]  Both prongs of this test must be met for relief to be granted, but a habeas court need not conduct an analysis under both prongs if the petitioner fails to establish one of the prongs.[91]

A reviewing court's scrutiny of counsel's performance is highly deferential since "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.[92]  The reviewing court is not to indulge in hindsight, but to evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged error.[93]  In that regard, trial counsel's tactical decisions are particularly difficult to attack, and a defendant's challenge to such decisions must overcome a presumption that the challenged action was sound trial strategy.[94]

---

[90] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[91] *Id.* at 697.

[92] *Id*. at 689-90.

[93] *Id.* at 690.

[94] *Darden v. Wainwright*, 477 U.S. 168, 185-87 (1986); *see also*, *Franklin v. Anderson*, 434 F.3d 412, 428 (6th Cir. 2006) (citations omitted).  "A criminal appellant is constitutionally entitled to the effective assistance of counsel in his direct appeal."

In the case of appellate counsel, a comparable test applies.[95]  Specifically, reasonable appellate advocacy is recognized to involve "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."[96]  However, a habeas court must consider various factors concerning any omitted issues to determine if appellate counsel's action in omitting those issues amounted to ineffective performance.[97]

With regard to satisfying the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.[98]  However, a focus solely on a "but for" analysis of the outcome "may grant a defendant a windfall to which the law does not entitle him."[99]  Thus, properly understood, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's performance so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[100]

---

[95] *Smith v. Jago*, 888 F.2d 399, 405 n.1 (6th Cir. 1989).

[96] *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

[97] *Franklin*, 434 F.3d at 428-29 (citing *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999)).

[98] *Strickland*, 466 U.S. at 694.

[99] *Lockhart v. Fretwell*, 506 U.S. 364, 370.

[100] *Strickland*, 466 U.S. at 686.

Likewise, with claims of ineffective assistance of appellate counsel, counsel's failure to include an issue on appeal can only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal.[101]

### (3)    *Non-cognizable state evidentiary law claims*

An issue concerning the admissibility of evidence is a matter of state law that does not rise to the level of a constitutional violation unless the error was so egregious that the petitioner was denied a fundamentally fair trial.[102]  To the extent that the argument is solely framed as a matter of state law, the habeas petitioner does not state a claim on which habeas relief can be granted.[103]

Generally, to prevail on allegations that a petitioner was denied a fundamentally fair trial, the petitioner must show that the evidentiary rulings complained of "offended some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."[104]

### (4)    *Procedural default*

It is a well-established rule that "[t]he federal court will not review claims that were not entertained by the state courts either because of petitioner's failure to raise those claims

---

[101] *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004) (citation omitted).

[102] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).

[103] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[104] *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000), quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

31

in the state court while state remedies were available *or* when a state procedural rule prevented the state court from reaching the merits of the claim."[105]  In that regard, claims of procedural default based on a state court declining to reach the merits of a constitutional claim because the petitioner failed to comply with a state procedural rule are analyzed in this Circuit under the following, well established test:

> First, there must be a state procedure in place that the petitioner failed to follow.  Second, the state court must have actually decided the petitioner's claim on the ground of the state procedural default.  Third, the state procedural ground must be an "adequate and independent" state ground to preclude habeas review.[106]

If these three factors are met such that a procedural default is established, a petitioner can still obtain review of his claim by a federal habeas court by showing cause for the default and actual prejudice as a result of the claimed violation of federal law.[107]  Demonstrating "cause" requires showing that some factor external to the petitioner, something that cannot fairly be attributable to him, prevented him from complying with the state procedural rule.[108]  Establishing "prejudice" requires finding that the alleged constitutional error, by itself, so

---

[105] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 431 (6th Cir. 2006) (emphasis in original, internal citations omitted).

[106] *Id.* at 431 (internal citations omitted).

[107] *Id.*

[108] *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

infected the entire trial that the conviction violated due process, not merely that the action complained of was undesirable, erroneous or even universally condemned.[109]

A petitioner unable to establish cause and prejudice for a procedural default may still obtain review of his claim if he submits new and reliable evidence that the alleged constitutional error has resulted in the conviction of one who is actually innocent.[110] Moreover, before ineffective assistance of counsel can be used as a cause to excuse procedural default, that instance of ineffective assistance must itself be fairly presented to and exhausted in state court.[111]

*(5)*   ***Basis for an evidentiary hearing***

Under 28 U.S.C. § 2254(e)(2), if the applicant for an evidentiary hearing in a federal habeas matter has failed to develop the factual basis of his claim in state court, the federal court shall not hold an evidentiary hearing unless (1) the underlying claim relies on a factual predicate that could not have been discovered through the exercise of due diligence and (2) the facts supporting the claim for habeas relief would be sufficient to show, by clear and convincing evidence, that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

---

[109] *United States v. Frady*, 456 U.S. 152, 168 (1982).  If a petitioner fails to establish cause for a procedural default, a federal habeas court need not consider the issue of prejudice. *Engle v. Isaac*, 456 U.S. 107, 134 (1982).

[110] *Dretke v. Haley*, 541 U.S. 386, 393 (2004).

[111] *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000).

Diligence depends on whether the petitioner made a reasonable effort, in light of the information available to him at the time, to investigate and pursue his claim in state court.[112] If the applicant for a federal evidentiary hearing can show that he diligently sought a state evidentiary hearing according to the state's rules, but was denied, he may be deemed to have met the statute's requirement for diligence.[113]

A federal habeas court's decision as to whether or not to hold an evidentiary hearing is reviewable for abuse of discretion.[114]

**B.    Application of standards to Krzywkowski**

*(1)    The state court's denial of ground one – purported ineffectiveness of trial counsel in not obtaining a defense expert – was not an unreasonable application of clearly established federal law and thus this claim should here be denied and no evidentiary hearing conducted.*

Here, in its decision affirming the trial court's denial of Krzywkowski's motion for post-conviction relief, the Ohio appellate court initially correctly cited *Strickland* as the basis for evaluating Kryzwkowski's claim of ineffective assistance of trial counsel.[115]  The court then noted that debatable trial strategic and tactical decisions may not form the basis for relief, even where better strategies may have been available.[116]

---

[112] *Williams*, 529 U.S. at 435.

[113] *McFarland*, 356 F.3d at 712.

[114] *Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003).

[115] *Krzywkowski*, 2004 WL 2535568, at *4.

[116] *Id.*

Specifically, the appeals court concluded that failure to call a defense expert, and instead to rely on cross-examination of the state expert, does not, *per se*, constitute ineffective assistance.[117]  Moreover, the failure to retain a defense expert is "unquestionably" a tactical decision since such an expert might, in the course of preparing his testimony, uncover facts that further inculpate a defendant.[118]  The court also observed that the purported expert testimony – which concerned general behavioral characteristics of abused children and was not based on direct examination of these victims – would not have changed the outcome of the trial even according to Krzywkowski's petition.[119]

Here, as noted, Krzywkowski argues that failure to have his own expert, and to instead rely only on cross-examination of the state's expert, "was not enough" and left the jury to evaluate the standard for judging behavioral characteristics of abused children only in light of the testimony of the state's witness,[120] a point of view that Krzywkowski's expert claims was not open to the concept of false reporting by children.[121]  He contends that his own expert would have "directly contradict[ed]" the state's witness such that failure to call his witness undermined the trial's fundamental fairness.[122]

---

[117] *Id.*

[118] *Id.*

[119] *Id.* at 4-5.

[120] ECF # 13 at 20.

[121] *Kryzwkowski*, 2004 WL 2535568, at *4.

[122] *Id.*

Whatever potential merit there may be in Krzywkowski's arguments if this were a pre-trial strategic conference of defense counsel, the arguments fail here.  First, there is no dispute that Krzywkowski's defense counsel did, in fact, conduct "an extensive and vigorous cross-examination of the state's expert,"[123] a cross-examination which explored the methodology and credentials of the state's expert, as well as the defense theory that the children here fabricated the abuse claims against Krzywkowski.[124]  As such, Krzywkowski cannot and does not claim that the jury never heard the notion that young children may lie in making reports of abuse.  Rather, he is reduced to arguing that it was ineffective assistance of trial counsel that the jury heard this argument during cross-examination rather than through a defense expert.  As the state court observed, the decision as to how best to present an argument is manifestly a tactical decision by trial counsel that is not easily challenged.

In addition, Krzywkowski does not here contest the critical detail that his purported expert never personally examined the children in this case.  As such, it is unlikely, as the state court also recognized, that merely presenting this expert to the jury would have resulted in a different verdict.  Whatever the strength of this expert's views on the general veracity of child witnesses in abuse cases, it is likely that the prosecutor would have argued, had this defense expert testified, that these are general observations and that this expert had no basis for individually challenging the truthfulness of these particular victims – victims the expert

---

[123] *Krzywkowski,* 2004 WL 2535568, at *5.

[124] *See*, ECF # 9 at 29; see also ECF # 9, Exs. 95-96 (trial transcript) at 1852-1925.

never examined but the jury heard from directly, creating an independent basis for judging them as to truthfulness.

In short, I recommend finding that the state court decision here was not an unreasonable application of *Strickland* and thus that ground one here should be denied.

In addition, because there is, as discussed, no basis for concluding that Krzywkowski can be successful in this claim alleging ineffective assistance for not calling this expert, there is no basis under the relevant statute for this Court granting an evidentiary hearing to permit the expert to present his testimony in greater detail. Once again, the key undisputed fact is that this expert never actually examined these victims[125] – victims who did testify and whose testimony was believed by the jury. Thus, as discussed, there is no basis to conclude that, but for the lack of this expert's testimony, no reasonable factfinder would have found Krzywkowski guilty. Accordingly, I recommend denying Krzywkowski's request for an evidentiary hearing.

**(2)     *Grounds two and three – alleging error in the admission of and comment on "other acts" testimony – are state-law evidentiary claims and so should here be dismissed as non-cognizable.***

The state appeals court here found that the trial court had properly admitted evidence of Krzywkowski's use of corporal punishment on his children in this case alleging rape because, pursuant to Ohio Rule of Evidence 404(B), the "other acts" corporal punishment evidence went to proof of "force," an element of the charged crime of rape.[126] The court

---

[125] As the state court noted, his report was based on a review of the trial transcripts and testimony of prosecution witnesses. *Id.*, at *4.

[126] *Krzywkowski*, 2002 WL 1987257, at **7-8.

concluded that the children's testimony that they feared physical punishment from Krzywkowski when he judged them to be "bad," was relevant to whether they submitted to Krzywkowski's sexual demands under the threat of force, thus constituting rape.[127]  Having concluded that this "other acts" evidence was properly admitted under Ohio evidence law, the appeals court also found no error in the prosecutor referring to such evidence in her closing argument to the jury.

Krzywkowski counters that since force is essentially presumed in the case of rape of a child, the admission of "inflammatory" evidence of Krzywkowski's physical punishment of the victims and his un-charged sexual abuse of another child had the effect unconstitutionally putting Krzywkowski on trial for having a bad character.[128]

As previously outlined, there is no dispute that the admission of evidence is a matter of state law, unreviewable by a federal habeas court, unless the admission of evidence was an error so egregious that, on a review of the whole record, it resulted in a fundamentally unfair trial.  Here, the testimony of the children themselves detailing their own abuse, as well as the testimony of their foster mothers relating how their behavior was consistent with abuse, provide independent bases for the jury to conclude that Kryzwkowski committed the acts he was charged with, quite apart from any effect from the "other acts" testimony.

Accordingly, I recommend finding that grounds two and three are non-cognizable state-law evidentiary claims and thus that these grounds should here be dismissed.

---

[127] *Id.*, at *8.

[128] ECF # 13 at 25.

***(3)*** ***Ground four – alleging constitutional error in permitting the testimony of 6-year old Kristen and 4-year old Aaron Krzywkowski – is procedurally defaulted, Krzywkowski has not excused the default for "cause" and thus this claim should be dismissed.***

Krzywkowski acknowledges that he did procedurally default this claim since a federal constitutional claim of error concerning admission of the testimony of the two children was not made to the Ohio appellate court, though the issue was raised as an issue of state law.[129] Krzywkowski asserts, however, that ineffectiveness of appellate counsel is responsible for the failure to state this claim as a federal matter, and so provides "cause" to excuse the default and here consider the claim.[130]

Initially, I note that Krzywkowski first raised the issue of ineffective assistance of appellate counsel in regard to this issue in his application for direct appeal to the Ohio Supreme Court.  That Court decline to accept the appeal.  When Kryzwkowski attempted to again present, during his Rule 26(B) application, to the Ohio appeals court this issue of ineffectiveness of appellate counsel in not federalizing this claim, that court refused to consider it, ruling it *res judicata*.  That court, alternatively, rejected that argument, finding that counsel is not ineffective for failing to federalize every argument on appeal.

The gravamen of Krzywkowski's argument is that his appellate counsel was ineffective for framing and arguing the issue of the children's competence to testify as a state rather than a federal claim.  Krzywkowski, in spending the bulk of his traverse arguing that

---

[129] ECF # 13 at 31.

[130] *Id.*

39

he was prejudiced by appellate counsel's failure to state this claim as a federal one,[131] appears to assume that his requirement to establish "cause" is self-evident. However, even if Krzywkowski believes that no proof is required to conclude that the decision to frame this argument on appeal was counsel's, not his, proof that the decision not to federalize this argument was ineffective assistance does require a showing, in the first instance, that counsel's performance here was deficient.

As discussed earlier, a decision to elect one argument over another in an appeal is not *per se* deficient or ineffective assistance of appellate counsel but is often the hallmark of effective appellate advocacy. Applying the test articulated in *Mapes*, this requires a case-specific analysis of the argument selected versus the argument rejected for appeal.

Here, Krzywkowski's appellate attorney spent considerable time strenuously arguing on direct appeal against the decision of the trial court to permit these children to testify, basing his argument on the purported failure of the trial court, under Ohio law, to consider the relevant factors that would permit the testimony of a child under 10.[132] In framing the issue in this way, Krzywkowski's appellate attorney recognized that (1) the decision to permit or disallow testimony was fundamentally a matter of state, not federal, law, and (2) the voire dire of the children conducted by the trial court appeared to violate the

---

[131] Id at 32-40.

[132] *Krzywkowski*, 2002 WL 1987257, at *9.

40

procedure set forth in the Ohio Supreme Court case of *State v. Frazier*, which was directly applicable to Krzywkowski's case.[133]

In fact, the Ohio appellate court decision affirming the trial court's decision also appears to validate the strategy of Krzywkowski's appellate attorney in pursuing this issue as a state law claim. The court noted, after an extensive review of the voir dire, that Krzywkowski was correct in claiming that the trial court "could have conducted a more extensive voire dire of the Krzywkowski children," but, in the end, the appeals court would not overturn the decision of the trial judge, who "was in the best position to determine whether these children were capable of receiving just impressions of facts and events and to accurately relate them."[134]

By contrast, raising this claim as a federal matter to the state court would have focused the claim to the single inquiry of whether admitting the testimony was an error so egregious as to deny Krzywkowski a fundamentally fair trial. As a practical matter, if the trial judge as a matter of state law did not abuse his discretion in admitting the children's testimony, then there was no error as a predicate for a federal claim.

Krzywkowski cannot prevail on the ground that effective appellate advocacy always and everywhere mandates the federalizing of every claim asserted as a matter of state law. Nor has he shown here that pursuing the state law claim without also federalizing it was deficient representation that would support an effective assistance of counsel ground for

---

[133] *Id.*

[134] *Id.* at 10.

relief.  The fourth ground for relief is, therefore, procedurally defaulted, as he concedes, and cause to excuse that default does not exist in that his appellate counsel was not ineffective for failing to assert it in the state courts.[135]

Accordingly, I recommend finding that Krzywkowski has waived this claim due to procedural default, that he has not shown cause for that default, and so this claim should here be dismissed.

## Conclusion

For the foregoing reasons, I recommend that this petition be denied in part and dismissed in part, as more fully explained above, and that no evidentiary hearing be conducted.


Dated:  April 21, 2008                          s/ William H. Baughman, Jr.
                                                United States Magistrate Judge


## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[136]

---

[135] *See*, *Frederico v. Yukins*, 39 F.3d 1181 (Table), 1994 WL 601408, at *5 (6th Cir. 1994) (*per curiam*) (failure to federalize claims not ineffective assistance of appellate counsel); *Eggemeyer v. Roper*, No. 402CV01486CEJAGF, 2006 WL 355258, at *9 (E.D. Mo., Feb. 15, 2006); *Rouse v. Phillips*, No. 1-CV-72688-DT, 2005 WL 1640176, at *8 (E.D. Mich., July 13, 2005); *but see*, *Jamison v. Collins*, 100 F. Supp. 2d 647, 740-41 (S.D. Ohio, 2000) (in a capital case where federal habeas review was likely, it was ineffective assistance of appellate counsel not to federalize all claims on appeal).

[136] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).